IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 1, 2017

## STATE OF TENNESSEE v. DAVID BLACK

**Appeal from the Criminal Court for Shelby County**
No. 15-00541    Paula Skahan, Judge

### No. W2016-02478-CCA-R3-CD

The defendant, David Black, appeals his Shelby County Criminal Court jury convictions of attempted rape of a child and aggravated sexual battery, claiming that the trial court erred by improperly admitting certain evidence and that the evidence was insufficient to support his convictions. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Harry E. Sayle III (on appeal) and Nick Cloud and Paul Pera (at trial), Assistant District Public Defenders, for the appellant, David Black.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Abby Wallace, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In February 2015, the Shelby County Grand Jury charged the defendant with one count each of attempted rape of a child and aggravated sexual battery. The trial court conducted a jury trial in April 2016.

The State's proof at trial showed that the victim, D.S.,[1] was 15 years old at the time of trial. In 2008, when the victim was eight years old, she and her mother began living with her aunt, A.Y.,[2] and A.Y.'s husband, the defendant. Shortly thereafter, the

---

[1]    It is the policy of this court to refer to minors by initials.

[2]    To protect the anonymity of the minor victim, we will refer to her relatives by initials as well.

victim's mother moved out of the residence, and the victim continued to reside with A.Y. and the defendant. In 2010, A.Y. and the defendant divorced, but the victim would often accompany her younger brother and her male cousins, C.Y. and D.B., to visit the defendant at his residence on certain weekends.

C.Y., who was also 15 years old at the time of trial, testified that the defendant treated the victim differently than the other children and that the defendant would spend more time with her:

> [The defendant will] let [the victim] do things like drive his car and he'll let me drive for like a few minutes and then he'll let her drive for the rest of the time that we're there until we go home.
>
> And then as far as food-wise, as if we'll have cookies and ice cream, I wouldn't have the cookies but he'll give her more of the food than he'll give me and [D.B.] because he'll say we either had enough or she didn't – we didn't have enough for her, so he'll give her the rest of the food.

C.Y. also recalled that the defendant would separate the victim from the other children on occasion. According to C.Y., the defendant would tell the boys to go outside to play, and he would make the victim stay inside "to clean up or help him with something or cook." When C.Y. and the other boys would attempt to reenter the residence while the victim was alone with the defendant, the defendant would permit them to get a drink of water but then make them return outside without the victim. The victim confirmed that the defendant would sometimes separate her from the boys.

In April 2013, the 12-year-old victim and her cousins, C.Y. and D.B., spent the weekend with the defendant at his home while the victim's mother and A.Y. traveled to Chicago for a funeral. On the Saturday night of the victim's stay, the defendant attempted to convince the victim "to have sex with him" while C.Y. and D.B. were both sleeping nearby. When the victim refused, the defendant told her that "it's not going to hurt" and made multiple attempts to remove the victim's pajama pants and underwear. Because the victim continued to resist, the defendant grabbed the victim around her waist and turned her body over on the bed, with her hands on the bed and her feet on the floor. The defendant was eventually able to pull down the victim's pants and underwear. The victim saw the defendant applying Vaseline to his erect penis, which was protruding through the opening in his boxer shorts.

The victim touched the defendant's penis "when [she] was trying to push him off [of her] when he kept coming forward." The victim noticed that the defendant's penis was "standing up" and that "it was hard and slimy from the Vaseline." As the victim continued in her attempts to fend him off, the defendant asked, "[Y]ou won't even do this for me after I let you drive my car?" The victim confirmed that the defendant had permitted her to drive his vehicle even though she was only 12 years of age at the time. The victim testified that the defendant attempted to penetrate her with his penis but that he was unsuccessful because she "kept telling him to stop and pushing him off and then once [she] got [her] clothes up" she escaped to the bathroom. The victim stated that both C.Y. and D.B. slept through the incident and that she purposely remained quiet because she "didn't want them to wake up and see that." When the victim reentered the defendant's room, the defendant was angry, but he made no further attempts to assault the victim.

On cross-examination, the victim acknowledged that she had later told her interviewer at the Child Advocacy Center that the defendant's sexual assault had occurred on April 4, 2013, and that it was on "a Wednesday or a Thursday."

The victim initially told no one what had transpired. On March 26, 2014, Memphis Police Department ("MPD") Officer Clayton Turner reported to a local middle school to give a presentation on "gangs, bullying and inapporprite touching." Shortly after he began his presentation, the victim and a teacher approached him. Officer Turner noticed that the victim appeared upset, and he directed her to speak with fellow MPD Officer Stacey Hughes. After Officer Hughes took the victim outside, the victim informed Officer Hughes that "her aunt['s] husband" had touched her inappropriately. As Officer Hughes pressed the victim for more details, the victim began "crying just uncontrollably" and "shaking really, really bad." Officer Hughes continued as follows:

> And [the victim] said that her aunt's husband, [the defendant], had touched her. And I say, okay, well, . . . tell me what you mean by touching you. And she starts crying again. She's still shaking at this point. Then she said that he had taken her clothes off and touched her all over her body. . . . And I say okay. So I told her to continue on. And she still, she's still crying, shaking. Through the whole conversation she's continued to cry and shake. And she said about a year prior to that he had, at his rooming house, that he had tried to stick his penis in her behind but that she was able to push him off.

Officer Hughes then contacted her MPD lieutenant who in turn contacted the sex crimes unit.

- 3 -

A.Y. testified that the funeral she had attended in Chicago which had occasioned her leaving the victim, C.Y., and D.B. with the defendant, had occurred on the weekend of April 20, 2013. A.Y. recalled leaving the children with the defendant on Thursday night, April 18, and picking them up on Sunday, April 21.

With this evidence, the State rested. Following a *Momon* colloquy and the trial court's denial of the defendant's motion for judgments of acquittal, the defendant elected not to testify but did choose to present proof.

Lynn Staggs, chief financial officer of D&W Plating Company, testified that the defendant had clocked in for work at 4:43 a.m. on April 4, 2013, and clocked out at 3:35 p.m. On April 5, the defendant clocked in at 5:02 a.m. and clocked out at 3:33 p.m. Ms. Staggs testified that the defendant did not work on Saturday, April 6 or Sunday, April 7.

Barry Brown testified that the defendant had rented a room from him in 2013, and through Mr. Brown's testimony, the defense introduced into evidence photographs of the furnishings in the defendant's room as it appeared in 2013.

Based on this evidence, the jury convicted the defendant as charged of one count of attempted rape of a child and one count of aggravated sexual battery. Following a sentencing hearing, the trial court merged the attempted rape of a child conviction into the aggravated sexual battery conviction and sentenced the defendant as a standard offender to a term of 12 years' incarceration to be served at 100 percent by operation of law.

Following the denial of his timely motion for new trial, the defendant filed a timely notice of appeal. In this appeal, the defendant contends that the trial court erred by improperly admitting evidence of his preferential treatment of the victim and that the evidence is insufficient to support his convictions. We will address each issue in turn.

## I. Admission of C.Y.'s Testimony

The defendant first contends that the trial court erred by admitting the testimony of C.Y. regarding the defendant's preferential treatment of the victim because it portrayed the defendant as possessing "a character flawed with the propensity to commit rape of a child" and was therefore "highly prejudicial." The State responds that the defendant has waived this issue for failure to comply with the requirements of Tennessee Rule of Appellate Procedure 3(e) and that, in any event, C.Y.'s testimony did not constitute improper character evidence.

Prior to trial, the trial court conducted a hearing on the admissibility of C.Y.'s testimony of the defendant's preferential treatment of the victim. At the hearing, C.Y. testified consistently as he did at the subsequent trial. The trial court ruled that C.Y.'s testimony was admissible because it did not qualify as a prior bad act as contemplated by Tennessee Rule of Evidence 404(b).

With respect to this issue in his motion for new trial, the defendant alleged only that the trial court "erred in allowing [C.Y.] to testify about bad acts that occurred prior to the allegations in question." In cases tried by a jury in Tennessee, "no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, . . . unless the same was *specifically* stated in a motion for a new trial; otherwise such issues will be treated as waived." Tenn. R. App. P. 3(e) (emphasis added). Issues presented in a motion for new trial must be "specified with reasonable certainty so as to enable appellate courts to ascertain whether the issue was first presented for correction in the trial court." *Waters v. Coker*, 229 S.W.3d 682, 689 (Tenn. 2007) (citing *State v. Gauldin*, 737 S.W.2d 795, 798 (Tenn. Crim. App. 1987)). Our supreme court has expounded as follows:

> Before an issue can be properly preserved in a motion for new trial under Rule 3(e), a well-pleaded motion should (1) allege a sufficient factual basis for the error by setting forth the specific circumstances giving rise to the alleged error; and (2) allege a sufficient legal basis for the error by identifying the trial court's claimed legal basis for its actions and some articulation of why the court erred in taking such actions.

*Fahey v. Eldridge*, 46 S.W.3d 138, 146 (Tenn. 2001).

Because the defendant failed to set forth with any specificity either the factual or legal basis of the court's alleged error in admitting the testimony of C.Y., he has waived our consideration of this issue. *See* Tenn. R. App. P. 3(e). Furthermore, we see no basis for noticing the alleged error despite waiver. *See* Tenn. R. App. P. 36(b). Even assuming that the admission of the testimony was improper, in light of the significant evidence of the defendant's guilt, as will be addressed herein, it would be harmless. Thus, nothing suggests that "'a substantial right of the accused [was] adversely affected'" or that "'consideration of the error is "necessary to do substantial justice."'" *See State v. Smith*, 24 S.W.3d 274, 282, 283 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)).

*II. Sufficiency*

The defendant also contends that the evidence is insufficient to support his convictions of attempted rape of a child and aggravated sexual battery. We disagree.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As charged in this case, "[r]ape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim" if the victim is between the ages of three and 13. T.C.A. § 39-13-522(a). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." *Id.* § 39-13-501(7). Criminal attempt occurs when a person "acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." T.C.A. § 39-12-101(a)(3). To qualify as a "substantial step," the person's "entire course of action" must be "corroborative of the intent to commit the offense." *Id.* § 39-12-101(b).

Aggravated sexual battery "is unlawful sexual contact with a victim by the defendant or the defendant by a victim" when "[t]he victim is less than thirteen (13) years of age." T.C.A. § 39-13-504(a)(4). "Sexual contact" is defined as including "the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's,

the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." *Id.* § 39-13-501(6). "'Intimate parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being." *Id.* § 39-13-501(2).

In the instant case, the proof at trial established that, during a weekend in April 2013 when the 12-year-old victim was staying at the defendant's residence, the victim touched the defendant's erect penis while she was attempting to push him away from her, which was sufficient to establish the defendant's conviction of aggravated sexual battery. With respect to the conviction of attempted child rape, the victim testified that the defendant urged her to engage in sexual intercourse with him and that, when she refused, he repeatedly attempted to remove her pajama pants and underwear. He eventually flipped the victim over onto her stomach on the bed, removed her pants and underwear, placed Vaseline on his erect penis, and repeatedly attempted to penetrate the victim with his penis from behind. This testimony cogently established the defendant's attempted sexual penetration of the victim. Although the defendant questioned the victim's conflicting testimony about the exact date of the assault and the sleeping positions of C.Y. and D.B. during the assault, such matters of witness credibility and evidentiary weight are within the exclusive province of the trier of fact, and this court will not reweigh such evidence. *See Dorantes*, 331 S.W.3d at 379.

Viewing this evidence in the light most favorable to the prosecution, we find that the evidence adduced at trial more than sufficiently established the defendant's convictions of attempted rape of a child and aggravated sexual battery.

*Conclusion*

Based upon the foregoing analysis, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE